UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

JEFFERY P. NERONSKY              ]
        Plaintiff                ]
                                 ]
        v.                       ]        Case No. 2:08-CV-220
                                 ]
JELD-WEN, INC.                   ]
        Defendant

**MEMORANDUM AND ORDER**

Plaintiff Jeffery P Neronsky sued his former employer, JELD-WEN Inc. ("JELD-WEN"), after being terminated in the wake of an industrial accident. The accident occurred when Neronsky walked under a large forklift-like machine called a "swing reach" at JELD WEN's North Springfield, Vermont plant. Neronsky claims wrongful termination as a result of age discrimination, breach of an implied employment contract, breach of implied covenants of good faith and fair dealing, and intentional infliction of emotional distress ("IIED"). Jurisdiction is based on diversity. JELD-WEN moves for summary judgment on all claims and the court now **GRANTS** this motion.

**FACTUAL BACKGROUND**

In considering this motion for summary judgment, the Court relies upon the following facts which are not in dispute, or if in dispute, taken in the light most favorable to the non-moving party.

Neronsky was a machine operator at the JELD-WEN plant in

Springfield, Vermont from April 2007 to May 2008. JELD-WEN is a privately held corporation that manufactures windows and doors. At the beginning of his employment, Neronsky was given a Company Employee Handbook which states that the employment relationship at JELD-WEN is at will.[1]

In addition to the Employee Handbook, the Plaintiff was also given a safety manual entitled "Employee Orientation Introduction to Safety and Quality." This includes instructions on the safety of employees.[2] JELD-WEN and Neronsky agree that the company informed him of the safe practices for working around forklifts. (Pl. Dep. 104:4, February 10, 2009).

Plaintiff signed a document, the "Handbook Acknowledgment and Agreement" acknowledging he had received and reviewed the

---

[1] The first page of JELD-WEN's employee handbook states: "The Company policy statements in this Handbook are provided as standards and guidelines for the employer and the employee, but are not to be considered as an employment contract between the parties. It is recognized that an "at-will" employment relationship exists. Either you or the Company have the right to terminate the employment relationship at any time for any reason or for no reason. Nothing in this Handbook or the relationship between you and the Company, either now or in the future, whether oral, written, or implied, may be construed or interpreted to create an employment relationship other than at-will. (Def. Ex. 2, JELD-WEN Employee Handbook at i). The Employee Handbook includes "Standards of Conduct" which set forth a "non-exhaustive list of misconduct, which are subject to disciplinary action, up to and including termination, at Management's discretion."(Def. Ex. 2 at 6). The Employee Handbook also provides that it is employees' responsibility to "avoid...any action that may injure someone" and "above all, think and work safely." (*Id*. at 5).

[2] Neronsky signed a written acknowledgment that he had received the safety manual and had received safety training. (Def. Ex. B, Farmer Decl.). Neronsky admits he heard that JELD-WEN wanted employees to take responsibility for maintaining a safe work environment for everyone. (Pl. Dep. 101:25-102:5).

2

Employee Handbook (Pl. Dep. 60:4-61:22).[3] The Plaintiff also attended a three-day orientation session including discussion of safety issues. (Pl. Dep. 77:1-15), and watched a safety video entitled "JELD-WEN Millwork Distribution Group Safety Orientation Program" ("the Safety Video"). (Pl. Dep. 190:2-5). The Safety Video directs employees never to position themselves between a "lift truck and a fixed object," as such activity could result in "getting pinned and possibly crushed," and warns employees to "never stand or walk under elevated forks." (Farmer Decl. at 2, Def. Ex. C-8, C-9 still shots of Safety Video). Neronsky acknowledges he probably heard these instructions and that it would be "common sense" not to walk under the elevated forks of a forklift. (Pl. Dep. 136:13-18, 191:10-14 ).

Neronsky was not given a document entitled "JELD-WEN Corporate Policies and Procedures." This Corporate policy

---

[3] The Handbook Acknowledgment and Agreement provides: " I acknowledge that I have received and reviewed a copy of the JELD-WEN Employee Handbook and understand that it sets forth the terms and conditions as well as the duties, responsibilities and obligations of my employment with JELD-WEN. I understand and agree to be knowledgeable about and to abide and be bound by the rules, policies, and standards set fourth [sic] in the Employee Handbook. I also acknowledge that my employment with JELD-WEN is at-will, which means it is not for a specified period of time and can be terminated at any time with or without cause or notice, by me or by JELD-WEN. I acknowledge that no statements or representations regarding my employment can alter the foregoing. I acknowledge that, except for the policy of at-will employment, JELD-WEN reserves the right to revise, delete, and add to the provisions of this Employee Handbook at its sole discretion. I understand and accept the foregoing statements regarding my employment with JELD-WEN. (Def. Ex. 3, Handbook Acknowledgment and Agreement).

3

handbook was given solely to managers, but a copy was on file in the JELD-WEN office. Neronsky did not read this document prior to his termination, and learned of it only after his friends investigated after he was fired. (Pl. Dep. 71:12-24). The document includes a discussion of a progressive system of discipline for employee transgressions.

On May 19, 2008, after working at JELD-WEN for nearly a year, Neronsky was on his way to the restroom (Pl. Dep. 143:17-20) when he attempted to go around and then under a specialized forklift machine called a swing reach (Pl. Dep. 201:1-8). Neronsky did not check to determine if another route to the bathroom was available. (Pl. Dep. 192:8-193:2). He noticed the swing reach at the end of the aisle. He began to travel down the aisle, rather than to turn around. (Pl. Dep. at 149:8-25). He did not know what the swing reach did and was not aware it was dangerous. (Pl. Statement of Facts ¶ 67).

At the time Neronsky approached the swing reach, the operator of the machinery, Ryan Branch, was about to lower the swing arm. Neronsky attempted to go under the swing arm, without alerting Ryan Branch of his presence. (Decl. of Ryan Branch ¶ 3). Neronsky did not realize the "red box" of the swing reach had an employee in it. (Pl. Statement of Facts ¶ 51). Neronsky collided with the forklift and suffered severe scalp lacerations to his forehead which required emergency attention, including stitches

4

and/or staples. (Am. Compl. ¶ 12).

After the accident, JELD-WEN conducted an investigation of the cause. JELD-WEN's Safety Manager, Bruce Handel, conducted interviews with employees who had been working the evening of May 19, 2008, including Group Manager Glen Barber, Neronsky's direct supervisor, and the swing reach operator, Ryan Branch. (Handel Decl. at ¶ 4).

Neronsky was suspended from the company the day after the accident and was terminated from his position three days later. JELD-WEN's termination notice stated that Neronsky's, "behavior constituted and [sic] egregious series of unsafe acts under the company's safety policies, which has resulted in his termination from JELD-WEN, inc [sic]." (Def. Ex. 11, Mot. Summ. J.,).

After the accident and his subsequent termination, Neronsky suffered severe emotional distress, to the point he was close to requiring hospitalization. (Abney Dep., 19:21-20:17, June 2, 2009) He was on suicide watch "a few times" (Pl. Dep. 252:13-252:15). Neronsky stated he believed he was fired "because [JELD-WEN] panicked, and the severity of the injury, they probably thought it was a lot worse than it was." (Pl. Dep. 236:4-6). He filed an administrative complaint concerning his termination with both Vermont's Department of Labor (DOL) Occupational Safety and Health Administration (VOSHA) and the Civil Rights Unit of the Vermont Attorney General's Office, alleging he was discharged in

retaliation for asserting a claim for workers' compensation benefits. (Pl. Dep. 221:3-223:1). In the complaint to the Civil Rights Unit, Neronsky did not assert an age discrimination claim. (Pl. Dep. 221:18-22). Plaintiff complaints with both VOSHA and the Attorney General's office were dismissed. (Pl. Dep. 197:1-11, 231:7-14).

Neronsky then brought suit against JELD-WEN in the Superior Court for Windsor County, Vermont on July 28, 2008. JELD-WEN removed the case to this court on the basis of diversity jurisdiction. Neronsky's amended complaint alleged age discrimination, breach of contract, breach of implied covenants of good faith and fair dealing, and intentional infliction of emotional distress. He has abandoned his age discrimination claims, leaving only the state law claims above.

**DISCUSSION**

**I. Standard for Summary Judgment**

Summary judgment should be rendered for a moving party if the court finds that there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment has the burden of showing no issues of material fact exist. *Id.* at 325. All inferences will be drawn in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 255 (1986), citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970). Courts have agreed "Summary judgment may be appropriate in even the most fact-intensive discrimination cases." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).

## II. Breach of Implied Contract[4]

In Vermont, employment contracts are assumed to be at-will unless there is evidence to the contrary. *Ross v. Times Mirror, Inc*. 665 A.2d 580, 583 (Vt. 1995). Neronsky's employment at JELD-WEN was governed by an Employee Handbook and an Employee Handbook Acknowledgment, which explicitly provided for an at-will employment relationship and specified that employees are subject to discipline, "up to and including termination, at management's discretion" for safety violations. (Pl. Statement of Facts ¶¶ 3-6).

Neronsky has acknowledged his at-will status as an employee of JELD-WEN. (Pl. Dep. 61:1-22). The applicable employment policies in the Employee Handbook preserve JELD-WEN's discretion to discharge employees for safety violations. There is no evidence to suggest that JELD-WEN modified its Employee Handbook and personnel policies by its expression and practices to an extent that it was obligated to warn plaintiff before it fired

---

[4] Because this case is based on diversity jurisdiction, the Court will apply Vermont law.

him.

Neronsky argues that JELD-WEN's actions created an implied employment contract. An implied employment contract occurs when the at-will presumption of Vermont employment contracts is overcome by "evidence that the employer expressly or by clear implication foreclosed the right to terminate except for cause." *Leblanc v. United Parcel Service, Inc.* No. 95-00068, 1996 WL 192011, at *2 (D. Vt. Apr. 2, 1996); *See Benior v. Ethan Allen, Inc.,* 514 A.2d 716 (1986). The evidence does not support that JELD-WEN made any such agreement or instituted any personnel policies that created an implied employment contract.

Neronsky's claim based on a progressive discipline system in the "JELD-WEN Corporate Policies and Procedures," document also fails. This document was given solely to managers, and does not alter the at-will relationship between JELD-WEN and Neronsky. In addition, Neronsky admits that he never read this document while employed at JELD-WEN, and indeed did not know of its existence (Pl. Dep. 71:12-24). Neronsky cannot base an implied contract claim upon a policy that was not distributed to employees and which was unknown him until after his discharge. It is not possible that he could have bargained to include these provisions in his employment agreement. *Marcoux-Norton v. Kmart Corp.,* 907 F. Supp. 766, 775 (D. Vt. 1993), *see also Ross,* 665 A.2d at 580 (only policies that are "definitive in form, communicated to

8

employees, and demonstrate an objective manifestation of the employer's intent to bind itself will be enforced.").

**III. Breach of Covenant of Good Faith and Fair Dealing**

Every contract contains a covenant of good faith and fair dealing; "its boundaries, however, are contextual and fact specific." *R & G Prop., Inc. v. Column Fin., Inc.*, 968 A.2d 286, 300 (Vt. 2008)(citing *Carmichael v. Adirondack Bottled Gas Corp*, 635 A.2d 1211, 1216 (Vt. 1993)). This covenant "is an implied promise that protects against conduct [that] violates community standards of decency, fairness and reasonableness." *Id*. (citing *Harsch Props., Inc. v. Nicholas*, 932 A.2d 1045(Vt. 2007).

Here there is no binding employment contract between the Plaintiff and the Defendant because the employment is at-will, and therefore no benefits of such an implied employment contract could have been lost by the defendant. Neronsky engaged in unsafe conduct warranting dismissal at the discretion of JELD-WEN. There is no evidence that JELD-WEN "panicked" and fired Neronsky in response to the perceived severity of his injury, as he alleged. (Pl. Dep. 236:4-6). No evidence shows that the investigation conducted by JELD-WEN was done in anything but good faith. The investigation included talking to various employees at work when the accident occurred and confirmed that Neronsky had violated the tenets of workplace safety in a manner sufficiently concerning to justify termination.

9

## IV. Intentional Infliction of Emotional Distress

Vermont law "recognizes the tort of intentional infliction of emotional distress." (IIED) *Crump v. P & C Food Mkts., Inc.*, 576 A.2d 441, 448 (Vt. 1990). In order to succeed on an IIED claim, the plaintiff must prove: "(1) conduct that is extreme and outrageous; (2) conduct that is intentional or reckless; and (3) conduct that causes severe emotional distress." *Thayer v. Herdt,* 586 A.2d 1122, 1126 (Vt. 1990)(citing *Sheltra v. Smith*, 392 A.2d 431,433 (Vt. 1978)); *see also Denton v. Chittenden Bank,* 655 A.2d 703, 706 (Vt. 1994); *Crump*, 576 A.2d at 448. Termination from employment alone cannot serve as the basis for an IIED claim. *Crump*, 576 A.2d at 448 (Vt. 1990).

To fulfill the requirements of an IIED claim, the termination has to be conducted in such a way that it includes "oppressive conduct and abuse of a position of authority." *Id*. Neronsky asserts that this type of oppressive conduct can be shown by the fact that he was not questioned as part of the investigation of the accident. This claim fails. There does not appear to be improper or unfair conduct in the manner of termination, and nothing to suggest the level of outrageous behavior to give rise to an IIED claim.

There is also no evidence that JELD-WEN abused its authority in the dismissal of Neronsky, and no conduct to suggest JELD-WEN's behavior was outrageous. Furthermore, there is no evidence to

10

suggest that the actions were designed to cause him severe emotional distress or that JELD-WEN recklessly disregarded the impact upon Neronsky's emotional condition. Because there is no evidence of conduct that rises to level necessary for an IIED claim, it is not necessary for the Court to reach the issue of whether the workers' compensation statute bars an IIED claim under Vermont Workers' Compensation Act. 21 V.S.A. §§ 601-710 (1987).

**CONCLUSION**

There are no genuine issues of material facts and summary judgment is appropriate in this case. JELD-WEN has shown the undisputed facts do not support that breach of contract, breach of covenant of good faith and fair dealing, or intentional infliction of emotional distress have occurred. Therefore, the Defendants' motion for summary judgment is **GRANTED**. In addition, the Plaintiff has abandoned his age discrimination claim. The case is hereby **DISMISSED WITH PREJUDICE.**

Dated at Burlington, Vermont this 18th day of November, 2009.

                                          /s/ William K. Sessions III
                                          William K. Sessions III
                                          Chief Judge, U.S. District Court